IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

KAREN LOUISE CARTER, an individual on
behalf of herself and others similarly situated,

        **Plaintiff,**

v.                                         Civil Action No. 1:10-cv-01155-egb

JACKSON-MADISON CO. HOSPITAL DIST.
D/B/A WEST TENNESSEE HEALTHCARE,    OPT IN COLLECTIVE ACTION
                                                                  JURY DEMANDED

        **Defendant.**

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS COMMON LAW CLAIMS**

---

      COMES NOW the Plaintiff, Karen Louise Carter, an individual on behalf of herself and others similarly situated, and submits this Response in opposition to the Rule 12 (b)(6) Motion to Dismiss filed by Defendant Jackson-Madison County Hospital District d/b/a West Tennessee Healthcare:

        **I.**    **STATEMENT OF THE CASE**

      This is a collective action in which Plaintiff has moved for authorization to proceed as an opt-in collective action for overtime violations under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b) and unjust enrichment under Tennessee law, on behalf of numerous employees of Defendant who were denied proper compensation. The Defendant is the Jackson-Madison County Hospital District, which does business as West Tennessee Healthcare (hereinafter "Defendant"). Defendant owns and operates a number of healthcare facilities throughout the West Tennessee region. The putative class in this case is all hourly employees of Defendant who

work at Defendant's locations and were subject to the Defendant's automatic meal deduction policy. The representative plaintiff worked for Defendant as an hourly non-exempt employee. As a matter of policy and practice, Defendant automatically clocked hourly employees out for a 30 minute lunch break with its computerized time and attendance system, even though the employees regularly and repeatedly were unable to take their full lunch break.

It is extremely common for hourly employees to perform compensable work for Defendant during their uncompensated "meal breaks." Yet Defendant does nothing in practice to prohibit employees from working during their "meal breaks" and routinely suffers or permits employees to perform such work. In fact, although Defendant automatically deducts 30 minute meal periods, it expects employees to be available to work throughout their meal breaks. Not only is failure to pay the putative class members compensation for these lunch breaks illegal under the FLSA, but Defendant is liable even to those individuals who did not work a forty (40) hour week, and thus are not protected under the FLSA, under the theory of unjust enrichment. As a result, Plaintiff filed this lawsuit on behalf of herself and others similarly situated.

Defendant has filed a Motion to Dismiss Plaintiff's Common Law Claims, arguing that such claims are preempted by federal law, are insufficiently plead, or in the alternative that the Court should decline to exercise supplemental jurisdiction. Notably, Defendant does not dispute Plaintiff's FLSA claims. Using hostile language, Defendant attacks only her claim for unjust enrichment.[1] Defendant's Motion is devoid of merit and should be DENIED

---

[1] It should also be noted that Defendant's language grows more hostile and combative with every filing in this case. Plaintiff is troubled by this in light of Tennessee Rule of Professional Conduct 8 § 3.5(e) governing the Impartiality and Decorum of the Tribunal, which states: "A lawyer shall not engage in conduct intended to disrupt a proceeding before or conducted pursuant to the authority of the tribunal." *Tenn. R.P.C., Rule 8 § 3.5(e) (2009)*. In comment 5 to the rule, it states:

> The advocate's function is to present evidence and argument so that the cause may be decided according to the law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants. . . . An advocate can present the cause, protect the

## II.   LAW & ARGUMENT

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Pleadings must be construed so as to do justice." *Fed. R. Civ. P. 8(e) (2010)*. The complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For a motion to dismiss under Rule 12(b)(6), "the complaint . . . does not need detailed factual allegations." *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "On a motion to dismiss, the complaint's well-pled factual allegations are treated as true and the Court construes such allegations in the light most favorable to the plaintiff, with all reasonable inferences in the plaintiff's favor." *Abadeer v. Tyson Foods, Inc.*, 2009 U.S. Dist. LEXIS 59488, at **12–13 (M.D. Tenn. July 10, 2009) (Appx. 1) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). "When a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1970).

### B. Defendant's Conduct is Part of an "Epidemic" of Employers Failing to Pay Proper and Lawful Wages to their Employees.

Defendant is correct that this case involves a "nationwide epidemic." It is, however, an "epidemic" of wage theft on the part of the healthcare industry in which countless employers are unfairly and unlawfully receiving free labor from their employees. Both the United States

---

      record for subsequent review, and preserve professional integrity more effectively by using patient
      firmness than using belligerence or theatrics."

*Id.*

Department of Labor and the private bar have come together in an effort to stamp out this wage theft in lawsuits and settlements across the country. In fact, counsel for Plaintiff recently resolved a virtually identical case against Vanderbilt Hospital. After the suit, Vanderbilt engaged in a "self-correction" process and reported same to the court. A copy of the letter filed by Vanderbilt with the court is attached hereto as **Exhibit A**. Relevant portions of that letter explained:

> . . . Vanderbilt is "self-correcting" the alleged underpayment of wages. Vanderbilt is paying voluntarily all current and former employees who, over a two-year period, claim to have worked through meal periods but yet failed to cancel the automatic meal deduction. . . .As part of the judicial settlement conference before Magistrate Judge Griffin, Vanderbilt explained in detail the manner in which it has embarked upon this "self-correction" process to determine if current or former employees claim to be owed wages for missed meal periods and if so, to pay those employees what they claim to be owed.

Additionally, the undersigned counsel represents to the court that at the settlement approval hearing before the district judge, the court was informed that more than $2.6 million had been distributed by Vanderbilt to putative class members, with more forthcoming. The U.S. Department of Labor also resolved an analogous case in St. Louis on a class basis. (Press Release from DOL attached hereto as **Exhibit B**). More recently, according to a *New York Times* article of four days ago, another similar case in Boston was settled for over $2.7 million. (**Exhibit C**). That *New York Times* article explains the scope of wage theft on the part of the healthcare industry. According to the article, the government "is investigating pay practices throughout the healthcare industry after finding that many hospitals and nursing homes do not pay proper overtime to nurses and other employees who work more than 40 hours a week." The article explains that "[h]ospitals around the country have paid millions of dollars in back wages to settle claims by the government and their employees. And many more hospitals are fighting class-action lawsuits that raise the same issues." (**Exhibit C).** The Albany office of the

4

Department of Labor concluded that "fewer than 36 percent of health care employers" were "in compliance with the federal wage and hour law." (**Exhibit C**).

Accordingly, Plaintiff's case is not just a "copycat" of these cases as Defendant suggests, but rather, represents one instance of the unlawful "epidemic" of wage theft that is ongoing in the healthcare industry and that must be remedied by this honorable Court.

### C. Plaintiff's State Law Claims are Not Preempted.

In addition to Plaintiff's claims under the FLSA, Plaintiff has asserted claims against Defendant under the state law theory of unjust enrichment. Plaintiff's state law claim is important because it will allow Plaintiff and other class members to recover unpaid "straight time" for those weeks where they did not work over forty hours in a workweek. This is especially important in this case, as nurses often work thirty-six (36) hour workweeks. Consequently, Plaintiff's state law claims for unjust enrichment are crucial and despite Defendant's arguments to the contrary, are not preempted by the FLSA.

Absent an express dictate, it is "presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). "In all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). As explained by Justice O'Connor, "The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever

tension there [is] between them." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166–67 (1989).

In enacting the FLSA, Congress indeed indicated an awareness of state wage protection laws. The FLSA was designed to give specific *minimum* protections to individual workers and to ensure that each employee covered by the Act would receive "'a fair day's pay for a fair day's work'" and would be protected from "the evil of 'overwork' as well as 'underpay.'" *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981) (*overruled on other grounds*). Furthermore, Congress included a "savings clause" in the FLSA that enables states and municipalities to enact more favorable wage, hour and child labor legislation. *See 29 U.S.C. § 218(a).*[2]

"State law is preempted if the Court determines that (1) Congress expressly preempts state law; (2) Congress has regulated pervasive conduct in a field manifesting its intent to preempt state law; or (3) the state law conflicts with federal law." *E.g.*, *Osby v. Citigroup*, 2008 U.S. Dist. LEXIS 39041, at * 4–5 (W.D. Mo. May 14, 2008) (Appx. 2). Clearly, express and field preemption do not apply to Plaintiff's state law claims, as the FLSA does not expressly preempt state law claims and the savings clause moots any argument to field preemption (Additionally, Defendant's Memorandum also only argues conflict or "obstacle" preemption, pp. 14–16). *See Abadeer v. Tyson Foods, Inc.*, 2009 U.S. Dist. LEXIS 59488, at * 15 (M.D. Tenn. July 10, 2009) ("Courts interpret this Section 218(a) as reflecting Congress's intention that the FLSA supplement . . . state statutes and the parties' . . . written contracts and that the FLSA does not preempt state wage and hour laws. Nor does the FLSA . . . preempt stricter state law

---

[2] Section 218(a), known as the "Savings Clause," provides: No provision of this Act or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this Act or a maximum workweek lower than the maximum workweek established under this Act . . . . *29 U.S.C. § 218(a).*

6

claims."). Under conflict preemption, Defendant must establish either that it would be "impossible" to comply with the state law, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963); or that "under the circumstances of [a] particular case, [state] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

      1. <u>The Sixth Circuit Has Suggested that State Law Claims are Not Preempted by the FLSA.</u>

While the Sixth Circuit has not expressly ruled on this issue, Defendant's preemption argument is inconsistent with the Sixth Circuit's holding in *O'Brien*. In the *O' Brien* decision the Sixth Circuit wrote favorably of state law claims co-existing with FLSA claims. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 580 (6th Cir. 2009). Recognizing that plaintiffs should be permitted to use the notice and opt in procedure of the FSLA for their companion state law claims, the Sixth Circuit held:

> If the opt-in plaintiffs are similarly situated to the lead plaintiffs, it does not make sense to suggest, as defendants seem to, that only FLSA claims may proceed collectively, while the supplemental claims would have to proceed individually or would be required to run parallel to the collective action only by satisfying the more stringent requirements of Fed.R.Civ.P. 23. To disjoin FLSA and supplemental claims in the manner proposed by defendants would defeat the purpose of supplemental jurisdiction, which is to facilitate the resolution of claims that are so closely related to claims for which federal jurisdiction originally lies that the supplemental claims are part of the same case or controversy as the claim independently invoking federal jurisdiction. Notwithstanding the lack of express statutory authority in the FLSA for collective certification of non-FLSA claims, supplemental claims by definition are treated as part of the sale controversy animated by a particular employee's FLSA claim.

*Id.* (internal citations omitted). Accordingly, the Sixth Circuit concluded, "[W]e have explained that an opt-in employee with FLSA and supplemental claims can have both of those claims certified as part of a collective action where a lead plaintiff has FLSA and supplemental claims." *Id.* It is axiomatic that the Sixth Circuit would not have opined on the procedure for bringing

state court claims in an FLSA collective action if in fact those state law claims were preempted. *See id.*

### 2. There is No Obstacle Preemption Between the FLSA and the State Law Common Law Claim of Unjust Enrichment.

To prevail on their obstacle preemption argument, Defendant must prove that the state law *actually conflicts* with the FLSA. *See e.g., Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1141 (E.D. Mo. 2007). Defendant has not made this showing, as Defendant merely erroneously asserts that "Plaintiff relies on the FLSA as the predicate for finding the Hospital's pay practices 'unjust.'" (Memo, pp. 9; 12). However, Defendant is mistaken in its assertion because there is no actual conflict between the FLSA and the Plaintiff's unjust enrichment claim due to the fact that Plaintiff's state claim provides additional remedies and relief beyond the FLSA.[3] Furthermore, although the FLSA and unjust enrichment state claims rely upon similar core factual allegations, each claim actually presents a separate and distinct theory of recovery. Additionally, despite Defendant's argument to the contrary, Plaintiff's unjust enrichment state law claim is not predicated upon finding that Defendant has violated the FLSA.

### a. Plaintiff's Unjust Enrichment Claim is Not Preempted by the FLSA because it Provides Relief that is Not Available under the FLSA.

Plaintiff's unjust enrichment claim was pleaded for the specific purpose of providing

---

[3] *See e.g.*, *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 308 (D. Mass. 2004) (An "FLSA action and state law remedies are entirely separate rights that may be pursued by the plaintiffs . . . . Nothing in the [FLSA] limits available remedies under state law."); *Abadeer*, 2009 U.S. Dist. LEXIS 59488 at **15–16 ("[S]tate laws do not conflict with the FLSA because in Section 218(a), Congress clearly did not preempt state wage laws. Thus, to enforce state wage laws does not interfere with any well crafted Congressional scheme. Moreover, the FLSA sets the minimum wage, whereas Tennessee's wage law and common law breach of contract claim enforce the agreed wages that may be higher than the compensation required by the FLSA. In that event, there is not any conflict. As to any duplication or multiple recoveries on the same wage, the Court can address that issue if it arises by requiring an election of remedies, if the facts establish the same wages on Plaintiffs' FLSA and state law claims. Thus, the Court concludes that the FLSA does not preempt Plaintiffs' state law claims."); *Medina v. Chas Roberts Air Conditioning, Inc.*, 2006 U.S. Dist. LEXIS 56020, at * 17 (D. Ariz. July 24, 2006) (Appx. 3) ("If the goal of the FLSA is generally to protect workers and their right to minimum wages and overtime, no threat to the accomplishment of that goal is posed by Medina's and Rico's state law claim for retaliatory discharge based on Arizona's requirement that an employer properly count the number of hours employees work and pay them the resulting sum by the time of their last regular paycheck.").

relief where there was no technical violation of the FLSA. *See Osby Citigroup, Inc., et al.*, 2008 U.S. Dist. LEXIS 39041, at **5–7 (W.D. Mo. May 14, 2008) (finding that Plaintiff's state law unjust enrichment claims were not preempted by the FLSA because they were plead to provide relief to those employees working less than a 40-hour work week whom the FLSA did not cover); *Cantu v. Owatonna Canning Co., Inc.*, 1978 U.S. Dist. LEXIS 16237, at *9 (D. Minn. Aug. 1, 1978) (Appx. 4) ("Since this action involves claims for wages above the minimum wage, the Fair Labor Standards Act could not provide an adequate remedy."). For example, there may be weeks where an employee of Defendant, paid at an hourly rate that exceeds federal minimum wage did not work 40 hours in a seven day period but did work time for which he was not compensated. *See e.g., Arnold v. State of Ark.*, 910 F. Supp. 1385, 1393–94 (E.D. Ark. 1995) (finding no FLSA violation for straight time where agreed upon hourly rate exceeded minimum wage). Nonetheless, this does not mean that Defendant should be allowed to unjustly benefit from work without providing compensation. *See e.g., Osby*, 2008 U.S. Dist. LEXIS 39041, at **5–7. Accordingly, because Plaintiff's unjust enrichment claim is designed to address "off the clock" time not covered by the FLSA, there is no conflict and consequently, no federal law preemption.[4]

In an analogous case from Tennessee, *Abadeer v. Tyson Foods, Inc.*, the court held that the FLSA did not preempt state law claims which were not dependent upon proving FLSA violations. *Abadeer v. Tyson Foods, Inc.*, 2009 U.S. Dist. LEXIS 59488 (M.D. Tenn. July 10, 2009). The plaintiffs in *Abadeer* alleged that they performed work for Defendant after they

---

[4] Although Defendant states in its Memorandum that the "Complaint contains no well-pleaded allegations showing the Hospital could be found liable for 'unjust enrichment' in the absence of finding that it used 'illegal' pay practices under the FLSA," this is simply not the case. See *supra*, Section *D.2.* for a discussion of the sufficiency of Plaintiff's allegations. Additionally, Plaintiff has attached a copy of its First Amended Complaint as **Exhibit D** which addresses Defendant's assertions and helps clarify the fact that the unjust enrichment claim is plead to compensate only those employees who have been worked "off the clock," but did not work more than 40 hours a week.

clocked out and during uncompensated meal breaks in violation of both the FLSA and the Tennessee Wage Regulations prohibiting such practices. *Id.* at **6–7. As a result, they brought a collective action under the FLSA as well as asserting state common law claims for breach of contract and state statutory claims under Tennessee Wage Regulations. *Id.* at **5–6. Like the Defendant in the instant case, the defendants in *Abadeer* "assert[ed] that Plaintiffs' state law claims duplicate Plaintiffs' FLSA claims and as such, are preempted by the FLSA." *Id.* at *13. The plaintiffs responded "that their state law claims [were] independent of their FLSA claims and are not preempted." *Id.* In holding that the FLSA did not preempt plaintiffs' state law claims, the district court reasoned:

> [S]tate laws do not conflict with the FLSA because in Section 218(a), Congress clearly did not preempt state wage laws. Thus, to enforce state wage laws does not interfere with any well crafted Congressional scheme. Moreover, the FLSA sets the minimum wage, whereas Tennessee's wage law and common law breach of contract claim enforce the agreed wages that may be higher than the compensation required by the FLSA. In that event, there is not any conflict. As to any duplication or multiple recoveries on the same wage, the Court can address that issue if it arises by requiring an election of remedies, if the facts establish the same wages on Plaintiffs' FLSA and state law claims. Thus, the Court concludes that the FLSA does not preempt Plaintiffs' state law claims.

*Id.* at **15–16. This decision by the Middle District of Tennessee is in accord with the majority of courts throughout the country which have found that state law claims are not preempted by the FLSA where the claims provide relief or remedies not available under the FLSA, or are not dependent upon proving an FLSA violation.[5] Likewise, Plaintiff's state law claim of unjust

---

[5] *See e.g.*, *Freeman v. City of Mobile*, 146 F.3D 1292, 1298 (11th Cir. 1998) (holding that "the FLSA does not preempt state law contract provisions that are more generous than the FLSA demands"); *Avery v. City of Talladega*, 24 F.3d 1337, 1348 (11th Cir. 1994) (holding that the FLSA does not preempt a state law contractual claim that seeks to recover wages for time that is compensable under the contract but not under the FLSA); *Robertson v. LTS Mgmt. Servs. LLC*, 642 F. Supp. 2d 922 (W.D. Mo. 2008); *Morrow v. Green Tree Servicing, LLC*, 360 F. Supp. 2d 1246 (M.D. Ala. 2005) (finding whether or not a state law claim is preempted by the FLSA depends upon the nature of the state law claims); *Chaluisan v. Simsmetal E. LLC*, 2010 U.S. Dist. LEXIS 27157, at **24–30 (S.D. N.Y. Mar. 23, 2010) (Appx 5); *Abadeer v. Tyson Foods, Inc.*, 2009 U.S. Dist. LEXIS 59488, at **15–16 (M.D. Tenn. July 10, 2009); *Doyel v. McDonald's Corp.*, 2009 U.S. Dist. LEXIS 9622, at *11 (E.D. Mo. Feb. 10, 2009) (Appx. 6) ("Here, plaintiffs assert their claims for unjust enrichment, quantum meriut, and breach of an

enrichment for uncompensated time for weeks in which employees of Defendant worked less than 40 hours a week is not dependent upon proving an FLSA violation and therefore, is not preempted by the FLSA. *See id.*

The cases relied upon by Defendant are not on point with the cases relied on by Plaintiff and in fact, do not conflict with the cases Plaintiff cites. In the cases relied upon by Defendant, the state law claims asserted by the plaintiffs were predicated upon a violation of the FLSA.[6] For example, in *Anderson v. Sara Lee*, the plaintiffs asserted *only* common law claims but did not contend that any of these common law claims entitled them to unpaid wages. *Anderson v. Sara Lee Corp., et al.,* 508 F.3d 181, 193 (4th Cir. 2007). Instead, the plaintiffs were actually "relying on the FLSA for their rights," including the argument that their breach of contract claim was premised upon defendants' agreement not to violate the FLSA. *Anderson*, 508 F.3d at 192–93. By contrast, Plaintiff not only seeks relief that is separate and apart from the relief provided under the FLSA (because the FLSA is inapplicable to the claims of those plaintiffs who worked under 40 hours per week), but Plaintiff is also *not* required to succeed on the FLSA claim to succeed on the unjust enrichment claim.[7]

---

implied contract are not dependent on enforcement of the FLSA."); *Osby v. Citigroup, Inc.*, 2008 U.S. Dist. LEXIS 39041, at 6 (W.D. Mo. May 14, 2008) (finding plaintiffs' state law unjust enrichment claim not preempted by FLSA because it was plead to provide compensation to those plaintiffs who did not work a 40 hour week and therefore are not covered by the protections of the FLSA); *Jackson v. Wal-Mart Stores, Inc.*, 2005 Mich. App. LEXIS 2975, at **28–29 (Mich. Ct. App. Nov. 29, 2005) (Appx 7) ("[T]hrough a pattern or practice that caused its employees not to report all time worked or to forego rest and meal breaks, Wal-Mart has been unjustly enriched by its employees. . . .As such, the FLSA does not, insofar as argued by Wal-Mart, provide plaintiffs with an adequate remedy at law precluding their equitable claims.").

[6]     *Anderson.,* 508 F.3d 181 (4th Cir. 2007) (preempting state law claims because they depended on a violation of the FLSA); *Rose v. Wildflower Bread Co.*, 2010 U.S. Dist. LEXIS 43501, at *22 (D. Ariz. May 4, 2010) (Appx. 8) ("the Court finds that under the circumstances of this case -- where the only state law claim wholly depends upon a violation of the FLSA – the FLSA preempts Plaintiff's Count II.); *Lopez v. Flight Servs. & Sys., Inc*., 2008 U.S. Dist. LEXIS 4744, at **20–21 (W.D.N.Y. Jan. 22, 2008) (Appx. 9) ("Accordingly, all of the state-law claims pertain to Defendants' alleged failure to pay Plaintiffs in accordance with the FLSA. Consequently, they are preempted by the FLSA and must be dismissed.").

[7]     In order to succeed on an unjust enrichment claim, Plaintiff must prove the following elements which are wholly independent from the proof required for Plaintiff's FLSA claim: 1) "[a] benefit conferred upon the defendant

      b. Even if Plaintiffs' State Law Claims are Duplicative of Their FLSA Claims, Which They Are Not, Dismissal Would Still Be Inappropriate.

Courts in other circuits have refused to dismiss state law claims on preemption grounds even where the state law claims are identical to the FLSA claims.[8] For example, in *Bouaphakeo v. Tyson Foods, Inc.*, the court found that even though the plaintiffs' state law claims depended on plaintiffs establishing violations of the FLSA, the Court reasoned:

> [B]ecause the FLSA does not provide the exclusive remedy for its violations, the court does not believe Plaintiffs' duplicative [state law] claim "interferes," "frustrates," "conflicts," or "stands as an obstacle" to the goals of the FLSA. . . . It may be true that Plaintiffs' [state law] claim depends on proving an FLSA violation to succeed. But the court does not see how this dependency or duplication means, under an implied/conflict/obstacle preemption analysis, that Plaintiffs' [state law] claim is preempted by the FLSA.

*Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 884–85 (N.D. Iowa 2008). Here, even assuming, *arguendo*, that Plaintiff's unjust enrichment state law claim is "duplicative" of its FLSA claim, it does not interfere, frustrate or conflict with the goals of the FLSA and, therefore, is not preempted.

      c. The Longer Statute of Limitations Provided under Plaintiff's Unjust Enrichment Claim Does Not Create a Conflict with the FLSA.

Moreover, the fact that Tennessee has a six-year statute of limitations for unjust enrichment does not intereferre, conflict, or frustrate the goals of the FLSA. Arizona addressed this exact issue in *Aragon v. Harvesting* and rejected this same argument by the defendant

---

by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005).

[8]    *See e.g.*, *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144 (9th Cir. 2000); *Overnite Transp. Co. v. Tianti*, 926 F.2d 220, 222 (2d Cir. 1991); *Cortez v. Neb. Beef, Ltd.*, 266 F.R.D. 275 (D. Neb. 2010); *Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 246 (W.D. Ark. 2010); *Huang v. Gateway Hotel Holdings*, 520 F. Supp.2d 1137, 1141 (E.D. Mo. 2007); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 884–85 (N.D. Iowa 2008); *Espenscheid v. DirectSat USA, LLC*, 2010 U.S. Dist. LEXIS 36309, at **23–24 (W.D. Wis. Apr. 13, 2010) (Appx. 10); *Montize v. Pittman Properties Limited Partnership*, 2010 U.S. Dist. LEXIS 24605, at **5–6 (W.D. Ark. Mar. 16, 2010) (Appx 11); *Medina v. Chas Roberts Air Conditioning, Inc.*, 2006 U.S. Dist. LEXIS 56020, at *17 (D. Ariz. July 24, 2006); *Davis v. Lenox Hill Hosp.*, 2004 U.S. Dist. LEXIS 17284, AT **27–28 (S.D.N.Y. Aug. 31, 2004) (Appx 12).

explaining:

> Furthermore, when discussing the federal statute of limitations provided by the amendments, congressional comment expressly states that this limitation does not apply to actions for the recovery of wages brought under state law. Apparently, Congress envisioned not only that state based claims for wages could be asserted, but that they could be governed by separate procedures.
>
> In light of these considerations and recognizing the clear conflict between [a certain] lines of cases, this court concludes that the state wage actions in this case which are governed by procedures more beneficial to plaintiffs than those in the FLSA and which may provide for remedies to plaintiffs more beneficial than those in the FLSA do not frustrate congressional purpose as evidence by the FLSA and the Portal to Portal Act amendments. Furthermore, because the state procedures and remedies only apply to state actions, and the federal procedures and remedies only apply to federal actions, this court finds no direct conflict based on the terms of the statutes

*Aragon v. Bravo Harvesting*, 1994 WL 197410, *3 (Bkrtcy. D. Ariz. May 12, 1994) (Appx. 13).

Accordingly, the fact that Tennessee's statute of limitations for claims of unjust enrichment is longer than that provided by the FLSA does not warrant preemption of the state law claim, particularly in light of the fact that the state law claims alleged by Plaintiff apply wholly independent of, and to claims not protected by, the FLSA.

**D. Plaintiff's Complaint Should Not Be Dismissed Under *Twombly/Iqbal*.**

    1. <u>Plaintiff's State Law Claims Satisfies the *Twombly/Iqbal* Pleading Requirements under Federal Rule of Civil Procedure 8(a)(2).</u>

Plaintiff's detailed Complaint more than satisfies the requirements of *Twombly* and *Iqbal*. In order to succeed on an unjust enrichment claim, Plaintiff must prove the following elements: 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005).

Plaintiff knows of no case holding that "well-pleaded allegations that plausibly show or infer an unfair or unjust *value* of compensation" as Defendant suggests. *Id.*; (Memo. p. 15). The value of the compensation – which is dependent on the size of the class and rates of pay -- is information in the hands of the Defendant that must be unearthed during discovery. After discovery, the "value" of the enrichment must be part of the proof at trial in order to recover a monetary judgment.[9] *See e.g.*, *John J. Heirigs Constr. Co. v. Exide*, 709 S.W.2d 604, 607 (Tenn. Ct. App. 1986) ("If plaintiff is to *recover* on the theories of quantum meruit and unjust enrichment it must carry the burden of *proving* the value of the work performed.") (emphasis added). Nevertheless, even assuming, *arguendo*, that Defendant's argument is correct, Paragraph 22 of Plaintiff's Complaint explains that the value and amount of the uncompensated services provided to Defendant by Plaintiff and each putative class member is in the possession of the Defendant and that information will be sought from Defendant through "appropriate and focused discovery proceedings." (Complaint, ¶ 22). Additionally, Defendant's assertion that the Complaint must somehow plead the inadequacy of the FLSA's remedies and the exhaustion of alternative remedies is likewise without merit. In light of the discussion above, Plaintiff would aver that this is not information that must be pleaded in order to sustain a cause of action for unjust enrichment.

---

[9] The United States District Court for the Western District of Arkansas recently encountered a motion to dismiss plaintiff's unjust enrichment claims. *Fairless v. CJH, LLC*, 2010 U.S. Dist. LEXIS 55398 (W.D. Ark. May 27, 2010) (Appx. 15). In that case, John Fairless, Jr. ("Fairless") filed suit alleging unjust enrichment against CJH, LLC ("CJH"), Union Pacific Railroad Company ("UPRC"), and Burlington Northern Santa Fe Corporation ("BNSF"), seeking compensation for railroad maintenance services he provided. *Id.* at *1.

The court explained that "in order to succeed with an unjust enrichment claim, Fairless must show that the defendants were "unjustly" enriched-that they retained a benefit under circumstances such that retention without payment would be inequitable." *Id.* at *13–14. As a result, the court found that Fairless had failed to show how Defendants UPRC and BNSF had been "unjustly enriched" because the allegations state that they were each billed by CJH for his work and that they paid CJH for his services. *Id.* at *16–17. The unjust enrichment claims against CJH, however, proceeded. *Id.* at *17. Notably, in its discussion on the sufficiency of the allegations which were plead against the defendants, the court did not find that the "value" of the work for which Fairless sought restitution must be plead in order to state a claim for unjust enrichment against CJH.

Finally, Plaintiff's Complaint adequately alleges that the enrichment to the Defendant was "unjust." Plaintiff's Complaint lays out the facts surrounding the unjust enrichment and the explanation for the under-recording of hours worked by stating that working through these deducted meal breaks is "required" and "expected" in order to perform the tasks assigned to her by Defendant, despite her complaints about such policies. (Complaint, ¶¶ 15–20). The *Lakeside Realtors* case relied upon by Defendant for support that Plaintiff's "awareness of risk of non-payment precluded the finding that non-payment was 'unjust'" is distinguishable from Plaintiff's claims against Defendant. (Memo., p. 17); *Lakeside Realtors, Inc. v. Ross*, 1990 Tenn. App. LEXIS 129, at *8–9 (Tenn. Ct. App. Feb. 28, 1990) (Appx. 16). Here, unlike in *Lakeside Realtors*, the Plaintiff knew exactly who her employer was (Defendant) and payment was expected for the services she provided. However, because Defendant "required" and "expected" Plaintiff to work through her uncompensated meal breaks, Defendant received the value of the services performed by Plaintiff without compensating her for the same. As a result, Defendant was "unjustly" enriched by its nonpayment to Plaintiff for the services it "required" and "expected" her to perform. *See Jackson v. Wal-Mart Stores, Inc.*, 2005 Mich. App. LEXIS 2975, at **34–35 (Mich. Ct. App. Nov. 29, 2005).[10]

---

[10] In *Jackson*, the defendant attempted to make a similar argument to the appellate court with respect to plaintiffs' unjust enrichment claim. *Jackson v. Wal-Mart Stores,* 2005 Mich. App. LEXIS 2975, **33–34 (Mich. Ct. App. Nov. 29, 2005). The appellate court however, found that plaintiffs' award was equitable under the circumstances even if they knew of the procedures set forth to prevent the uncompensated time, reasoning:

> . . .Wal-Mart cites its provision of a procedure for employees to request that their time be adjusted to reflect work performed but not otherwise recorded, of which Jackson acknowledged he was aware but failed to use to inform Wal-Mart of the missed or shortened breaks and off-the-clock work at issue in this case. Wal-Mart asserts that, in the face of such evidence, any conclusion that it would be unjust or otherwise inequitable for it to retain the benefits it may have received as a result of Jackson's claimed uncompensated work is clearly in error. Wal-Mart's argument in this regard, however, ignores the basic premise of the inequity claimed in this suit and supported by the testimony of organizational behavior expert William Cooke, i.e., that the business strategy employed by Wal-Mart, in conjunction with the **corporate culture expressly fostered by the company, resulted in a work environment wherein employees were compelled to perform work off the clock and to forgo rest and meal breaks.** Indeed, Cooke testified that Wal-Mart

15

      2. <u>Alternatively, Although Plaintiff's Complaint Properly Pleads the State Law Claim of Unjust Enrichment Against Defendant, Plaintiff's First Amended Complaint Makes Defendant's Argument Moot.</u>

Although Plaintiff has properly plead the state law unjust enrichment claim against Defendant in accordance with the standards for pleading under Federal Rule of Civil Procedure 8(a)(2) and as explained by the Supreme Court in *Twombly* and *Iqbal*, nevertheless, out of an extreme abundance of caution, Plaintiff has filed a First Amended Complaint which addresses Defendant's assertions and therefore, makes Defendant's arguments concerning the sufficiency of the pleadings moot. *See First Amended Complaint* attached hereto as **Exhibit D**.[11]

    **E. Supplemental Jurisdiction Should be Exercised in this Case.**

Defendant has asked this Court to decline to exercise supplemental jurisdiction over Plaintiff's state law unjust enrichment claims for a number of erroneous reasons. (Defendant's Memorandum, pp. 19–20). First, Defendant argues that the state law claims may substantially predominate and be irrelevant to the FLSA claims because of the enlarged statute of limitations. (Defendant's Memorandum, p. 19). Secondly, Defendant relies upon T.C.A § 28-3-105(3) for support for its argument that it is unclear whether Plaintiff's state law unjust enrichment claims would even be subject to the six year statute of limitations because it is a civil action "based upon the alleged violation of any federal . . . statute," thus implicating a three year statute of limitations. *Id.*

---

    employees would do so without "a second thought," because it was simply a part of the culture in which they worked. Given this premise and the testimony in support thereof, **we do not find the trial court's award inequitable under the circumstances of this case, despite the knowing existence of procedures purportedly set in place to prevent such inequity**.
*Id.* (emphasis added).

[11]     "Rule 15(a) to allow a plaintiff to file an amended complaint without leave of court when the defendant has not filed a responsive pleading. A motion to dismiss is not considered a responsive pleading under Rule 15(a). Therefore, to the extent that the Defendant[] ha[s] not responded to the Complaint, [Plaintiff is] free to file an amended complaint without leave of court." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 574 (6th Cir. 2008)

Plaintiff's state law claims are not based upon a violation of the FLSA and do not depend upon the FLSA in order to succeed. *See supra*, Section *C.2.a*. In fact, the FLSA does not even apply to those employees who have worked under 40 hours in a week and who have been uncompensated for the work they performed during their meal breaks. *Id.* Therefore, T.C.A. § 28-3-105(3)'s three year statute of limitations has no bearing on Plaintiff's state law unjust enrichment claims because the state law claims are not based upon any "alleged violation of any federal statute." *Tenn. Code Ann. § 28-3-105(3) (2010)*. Consequently, this is not a "novel" issue as Defendant attempts to urge this Court.

Furthermore, Plaintiff's state law claims for unjust enrichment may be brought with Plaintiff's federal claims for violation of the FLSA. Just because the statute of limitations is longer for the state claims does not warrant a decline of supplemental jurisdiction over the state claims. *See supra* Section *C.2.c.*; *see also*, *e.g.*, *Aragon v. Bravo Harvesting*, 1994 WL 197410, *3 (Bkrtcy. D. Ariz. May 12, 1994). Moreover, the Sixth Circuit in *O'Brien v. Ed Donnelly Enterprises* recently explained the procedure necessary for a plaintiff to bring state supplemental claims with an FLSA collective action and nowhere in its opinion did the Sixth Circuit limit its analysis to only cases where the state law claims contained the same three year statute of limitations that the FLSA does. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567 (6th Cir. 2009). In fact, the Sixth Circuit stated:

> If the opt-in plaintiffs are similarly situated to the lead plaintiffs, it does not make sense to suggest, as defendants seem to, that only the FLSA claims may proceed collectively, while the supplemental claims would have to proceed individually or would be required to run in parallel to the collective action only by satisfying the more stringent requirements of Fed. R. Civ. P. 23. . . .**To disjoin FLSA and supplemental claims in the manner proposed by defendants would defeat the purpose of supplemental jurisdiction**, which is to facilitate the resolution of claims that are so closely related to claims for which federal jurisdiction originally lies that the supplemental claims are part of the same case or controversy as the claim independently invoking federal jurisdiction.

> So far, we have explained that an opt-in employee with FLSA and supplemental claims can have both of those claims certified as part of a collective action where a lead plaintiff has FLSA and supplemental claims. That is the background for the situation we face, where a lead plaintiff has FLSA and supplemental claims, but an opt-in employee only has supplemental claims.
>
> . . .[A]n inquiry whether supplemental jurisdiction exists over state-law claims need only examine whether the state claims are so closely related to the federal claim that the state claims form part of the same Article III case or controversy as the federal claim. . . .**Therefore, as long as someone in a collective action has a FLSA claim, employees who are similarly situated can be part of the collective action, even if the other employees only have supplemental claims**.

*Id.* at 581 (emphasis added).

Accordingly, the Sixth Circuit's analysis expressly allows for supplemental jurisdiction in FLSA collective actions like Plaintiff's where the state and FLSA claims are related to the same set of facts and proof because it facilitates the resolution of claims and is in the best interests of judicial economy and resources. *Id.* This principle was again reiterated in the *Mathews v. ALC Partner Inc.* decision in which the district court explained that, "If the evidence needed to prove the federal and state claims is similar or identical, it cannot be concluded that the state law claims predominate over the federal claims or that the scope of the case will be expanded by exercising supplemental jurisdiction over the appended claims." *Mathews v. ALC Partner Inc.*, 2009 U.S. Dist. LEXIS 66290, **5–6 (E.D. Mich. July 31, 2009) (Appx. 17). The *Mathews* court continued its reasoning for the exercise of supplemental jurisdiction, which reasoning could directly be extended to the facts of Plaintiff's case, by explaining:

> In this case, the state law claims are intricately related to plaintiff's FLSA claim. All of the involved claims are based on how much plaintiff worked and how much she was paid. The values of judicial economy, convenience and fairness support the exercise of supplemental jurisdiction in this case. **If the state law claims are dismissed, the parties will be forced to litigate identical facts and issues in the state court.**

*Mathews*, 2009 U.S. Dist. LEXIS 66290 at **5–6.[12]  Similarly, in *Aguilera v. Mich. Turk. Producers Coop., Inc.*, the Michigan district court found that an exercise of supplemental jurisdiction is warranted where the state law claims and the FLSA claims arise out of the same set of facts. *Aguilera v. Mich. Turk. Producers Coop., Inc.*, 2009 U.S. Dist. LEXIS 100736, *5-6 (W.D. Mich. Oct. 28, 2009) (Appx. 18).[13]

A large number of other cases have allowed state class actions to proceed under supplemental jurisdiction with FLSA collective actions. *See e.g.*, *supra*, footnotes 4; 7.

Finally, Defendant argues that allowing this state law claim for unjust enrichment to proceed with Plaintiff's FLSA claim would be a "novel" issue of state law. However, this argument too is without merit because the *O'Brien* decision discussed above has announced the procedure for granting supplemental jurisdiction to bring claims of this very type. *O'Brien*, 575 F.3d at 581. Additionally, the *Abadeer* decision from the Middle District of Tennessee has allowed an FLSA collective action to proceed with supplemental jurisdiction extending to state law claims. *Abadeer v. Tyson Foods, Inc.*, 2009 U.S. Dist. LEXIS 59488 (M.D. Tenn. July 10, 2009)

---

[12] Additionally, not only will Plaintiff be forced to litigate the state law unjust enrichment claims in state court, but Plaintiff would have to utilize Tennessee Rule of Civil Procedure 23 in order to proceed with a class action against Defendant. *Tenn. R. Civ. P. 23 (2010)*. Should those claims exceed $5,000,000, as anticipated by Plaintiff that they reasonably could, the Class Action Fairness Act of 2005 ("CAFA") will kick in and put jurisdiction of the state law class action right back into this federal court, resulting in two separate lawsuits with much of the same proof. Such a result is not in the interest of judicial economy or resources and can be avoided by exercising supplemental jurisdiction over Plaintiff's state law claims in this FLSA collective action.

[13] The *Aguilera* court reasoned:
Similarly, ALC's alleged failures to pay compensation owed at separation **would arise from the same conduct as the FLSA violation** -- not paying plaintiffs for all the hours they worked. On the facts as pleaded, the same can be said of the meal-period claims: plaintiffs allege that they, or some of them, were forced to work during times that were scheduled as unpaid meal breaks. This single course of conduct would violate both the FLSA and the meal-period requirement. Finally, the wage-statements claim is also derivative of the failure-to-pay allegations that form the core of the FLSA claim: plaintiffs allege that ALC failed to properly record the wages they earned but were not paid. Therefore, the Court does have supplemental jurisdiction over these aspects of the plaintiffs' claims.
*Id.* (emphasis added).

19

## III. CONCLUSION

For the foregoing reasons, the Plaintiff's state law claims for unjust enrichment should not be dismissed as a matter of law.

Respectfully submitted,

s/ Michael L. Russell
MICHAEL L. RUSSELL (TN 20268)
CLINTON H. SCOTT (TN 23008)
101 North Highland Avenue
Jackson, Tennessee 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540
Email: mrussell@gilbertfirm.com
cscott@gilbertfirm.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that a true and exact copy of the foregoing has been mailed electronically via the Court's electronic filing system, to all counsel of record, including Lewis L. Cobb and Andrew Farmer, this 13th day of August, 2010.

s/ Michael L. Russell