UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

KAREN LOUISE CARTER, an individual
on behalf of herself and others similarly
situated,

        Plaintiff,

v.                                        No.  1:10-cv-01155-JDB-egb

JACKSON-MADISON COUNTY
HOSPITAL DISTRICT, d/b/a,
WEST TENNESSEE HEALTHCARE,

        Defendant.

_____

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COMMON LAW CLAIMS,
DENYING DEFENDANT'S RENEWED MOTION TO DISMISS WITH PREJUDICE ALL
FEDERAL AND STATE CLAIMS, AND ADOPTING REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT
SUPERVISED NOTICE UNDER THE FLSA

_____

On June 23, 2010, the Plaintiff, Karen Louise Carter, brought this action on behalf of

herself and others similarly situated, against the Defendant, Jackson-Madison County Hospital

District d/b/a West Tennessee Healthcare ("JMCHD"), asserting causes of actions pursuant to

the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 to 219, and under Tennessee

common law for unjust enrichment.  The Defendant has moved to dismiss the Plaintiff's claims

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket Entry ("D.E.") Nos. 9, 33.)

Carter responded in opposition to the motions, and JMCHD replied to the responses.  (D.E. Nos.

29, 32, 42, 45.)  After review of the materials submitted by the parties and for the reasons stated

herein, the Defendant's motions to dismiss are DENIED.

Plaintiff has also sought for this lawsuit to proceed as an opt-in collective action under § 216(b) of the FLSA.  (D.E. No. 4.)  The Court referred that motion to Magistrate Judge Edward G. Bryant for determination and/or a report and recommendation.  (D.E. No. 41.)  On December 16, 2010, Judge Bryant recommended that the Court conditionally certify the Plaintiff's collective action, to which JMCHD filed a timely objection pursuant to 28 U.S.C. § 636(b)(1). (D.E. Nos. 48, 49.)  Plaintiff responded to the Defendant's objections, and both parties filed additional replies.  (D.E. Nos. 50, 57, 60.)  Because the Court finds that Carter has satisfied the "modest factual showing" required for conditional certification of a FLSA collective action, the Magistrate Judge's Report and Recommendation is ADOPTED and Plaintiff's motion is GRANTED.

## I.   FACTUAL BACKGROUND[1]

JMCHD operates hospitals and healthcare facilities throughout the West Tennessee area with its principal facility located in Jackson, Tennessee.  (Am. Compl. ¶¶ 5-6, D.E. No. 28.) Carter is an hourly employee of JMCHD and staffs patient beds on a floor of the Jackson-Madison County General Hospital.  (Id. at ¶ 8.)  She alleges that the Defendant regularly required her to work during scheduled meal breaks but automatically deducted her pay for the length of those breaks.  (Id.)  Plaintiff brings this wage dispute as a collective action on behalf of all non-exempt JMCHD employees who performed compensable work during meal breaks but were not compensated for those time periods.  (Id. at ¶ 9.)

Carter avers that JMCHD utilizes a computerized time and attendance system to automatically deduct a thirty minute meal break from each work shift pursuant to its "Meal

---

[1] As required when considering a motion under Rule 12(b)(6), the Court will take the facts alleged in the Plaintiff's complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).  On August 13, 2010, Carter filed a first amended complaint pursuant to Fed. R. Civ. P. 15(a).  (D.E. No. 28.)

Break Deduction Policy."  (<u>Id.</u> at ¶ 10.)  However, Plaintiff contends that Defendant does not ensure that she and other employees are completely relieved of their responsibilities during those breaks but routinely permits employees to work during that period.  (<u>Id.</u> at ¶¶ 12-15.)  Carter states that patient demands do not change during the meal break, and Defendant does not provide additional staff to relieve them.  (<u>Id.</u> at ¶ 17.)  Plaintiff insists that she and other class members often have to respond to pages and requests by patients, co-workers, and supervisors during their breaks.  (<u>Id.</u> at ¶ 18.)

Carter alleges that JMCHD either knows or has reason to believe that compensable work is being performed during unpaid meal periods because she has complained about the demands on staff and the inability to take a full break.  (<u>Id.</u> at ¶ 19.)  Moreover, Plaintiff states that compensable work is performed during meal breaks in sight of her supervisors.  (<u>Id.</u> at ¶ 20.)  She further insists that the Defendant must know this practice is taking place due to the overall demands of the health care industry and staffing shortages.  (<u>Id.</u> at ¶ 21.)

Plaintiff's collective action complaint includes two claims.  First, Carter alleges a violation of the FLSA's overtime provision, 29 U.S.C. § 207(a).  (<u>Id.</u> at ¶ 25.)  She avers that the Defendant's practice of automatically deducting meal breaks from the pay of hourly employees had the effect of denying statutory overtime wages to Plaintiff and other class members.  (<u>Id.</u> at ¶ 41.)  She alleges that the Defendant's violation was willful as it knew or at least acted with reckless disregard for whether its policy violated the FLSA.[2]  (<u>Id.</u> at ¶ 42.)  Plaintiff therefore demands damages equal to the mandated overtime pay within the three years preceding the filing of her complaint.  (<u>Id.</u>)  Carter further alleges that JMCHD failed to act in good faith and lacked reasonable belief that its actions were not a violation of the FLSA.  (<u>Id.</u> at ¶ 43.)  On that basis,

---

[2] A two-year statute of limitations controls FLSA actions to recover unpaid overtime wages.  29 U.S.C. § 255(a).  However, the limitations period is extended to three years where the employer willfully violated the statute.  <u>Id.</u>

her complaint seeks an additional award as liquidated damages in an amount equal to that of unpaid overtime pay.  (<u>Id.</u>)  If the Court finds that Defendant's failure to pay its employees overtime was not willful, Plaintiff seeks an award of prejudgment interest.  (<u>Id.</u>)  In all, Plaintiff demands unpaid overtime compensation, liquidated damages, pre- and post-judgment interest, reasonable attorney's fees, and the costs of pursuing this action.  (<u>Id.</u> at ¶ 44.)

She brings her FLSA claim as an "opt-in" collective action on behalf of herself and all other similarly-situated individuals to include:

> All persons employed by Defendant within the three years preceding the filing of this action, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid "meal break."

(<u>Id.</u> at ¶ 25.)  Carter claims that JMCHD has been an employer engaged in interstate commerce which employed her and each prospective class member during the relevant time period set forth in the complaint.  (<u>Id.</u> at ¶ 38.)  Therefore, Plaintiff submits that the Defendant meets the definition of an "employer" and that she and other class members are "employees" of Defendant as defined by the FLSA.  (<u>Id.</u> at ¶¶ 39-40.)  <u>See</u> 29 U.S.C. § 203(d), (e)(1).

Second, Carter asserts a common law claim of unjust enrichment on behalf of herself and

> [a]ll persons employed by Defendant within the six years preceding the filing of this action, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid "meal break."

(<u>Id.</u> at ¶ 26.)  According to the Plaintiff, she and other similarly situated employees had their pay reduced for meal breaks during weeks in which they worked less than forty hours.  (<u>Id.</u> at ¶ 45.)  However, because the FLSA only protects employees who work forty hours or more during a week, Plaintiff states that the FLSA leaves her and others without an adequate remedy for those weeks.  (<u>Id.</u> at ¶ 46.)  Thus, she seeks damages based on the theory of unjust enrichment.

JMCHD moves to dismiss Plaintiff's claims on the grounds that they were insufficiently pleaded under Federal Rule of Civil Procedure 8.  (D.E. Nos. 9.)   Defendant further argues that the unjust enrichment claim is preempted by the FLSA, or alternatively, that the Court should decline supplemental jurisdiction over that allegation.  (Id.)  In response, Carter submitted a first amended complaint pursuant to Rule 15(a).  (D.E. No. 28.)  Thereafter, JMCHD filed a renewed motion to dismiss.  (D.E. No. 33.)

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Rule 8(a)(2) instructs that a pleading should be "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of a complaint is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal citations omitted) (quoting Fed. R. Civ. P. 8(a)(2) and Conley, 355 U.S. at 47, 78 S. Ct. at 103).  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim."  Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

In Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the United States Supreme Court explained that analysis under Rule 12(b)(6) requires a two-pronged

approach.  First, the reviewing court should determine what allegations within the complaint can be classified as "legal conclusions" and disregard them for purposes of deciding the motion.  Id. at 1949.  Second, the court should evaluate the remaining portions of the complaint—i.e. the well-pleaded facts—and ascertain whether it gives rise to a "plausible suggestion" of a claim.  Id. at 1950.   At the second stage, the court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Twombly, 550 U.S. at 556, 127 S. Ct. at 1965.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S. Ct. at 1949.  Naturally, the type and specificity of the facts that must be pleaded to render a claim plausible will vary depending on the elements of the cause of action asserted and the circumstances surrounding the litigation.  See United States ex rel. Snapp, Inc. v. Ford Motor Co., 532 F.3d 496, 502 n.6 (6th Cir. 2008) (noting that the requirement to plead particular facts may be especially important in "cases likely to produce 'sprawling, costly, and hugely time-consuming' litigation").  Compare Twombly, 550 U.S. at 564-69, 127 S. Ct. at 1970-73 (conducting a Rule 12(b)(6) analysis in a case involving a wide-ranging antitrust conspiracy among local telephone and internet service providers brought under § 1 of the Sherman Act), with Erickson, 551 U.S. at 93-94, 127 S. Ct. at 2199-2200 (analyzing a prisoner's pro se § 1983 civil rights claim).  As the Supreme Court has noted, facial plausibility is a "context-specific task" that requires the district court to "draw on its judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950.

III. ANALYSIS

A.  FLSA Claim

"Congress enacted the [FLSA] . . . 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work.'"  Wood v. Mid-Am. Mgmt. Corp., 192 F. App'x 378, 379 (6th Cir. 2006) (quoting Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 460, 68 S. Ct. 1186, 1194, 92 L. Ed. 1502 (1948)).  Section 207(a) of the Act "requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week."  Schaefer v. Ind. Mich. Power Co., 358 F.3d 394, 399 (6th Cir. 2004) (citing 29 U.S.C. § 207(a)(1)); see also Acs v. Detroit Edison Co., 444 F.3d 763, 764-65 (6th Cir. 2006).  Individuals "employed in a bona fide executive, administrative, or professional capacity" are exempt from the FLSA's overtime pay requirement, however.  29 U.S.C. § 213(a)(1).[3]

JMCHD argues that Carter failed to adequately plead a FLSA claim under the Supreme Court's interpretations of Rule 8(a)(2) in Twombly and Iqbal.  (Def.'s Reply to Pl.'s Resp. to Mot. to Dismiss 6-9, D.E. No. 32; Def.'s Renewed Mot. to Dismiss 3, D.E. No. 33.)  According to Defendant, Plaintiff's complaint lacks well-pleaded facts that she actually worked in excess of forty hours per week, which would trigger the FLSA's overtime provision.  (Def.'s Reply to Pl.'s Resp. to Mot. to Dismiss 6-8, D.E. No. 32.)  JMCHD additionally argues that Plaintiff had the ability to override the automatic deduction for days in which she worked during the meal break but failed to do so.  (Id. at 8-9.)

After reviewing Carter's first amended complaint, the Court finds that Plaintiff has sufficiently stated a claim to relief under the FLSA.  The Act's overtime provision orders that

> no employer shall employ any of his employees . . . for a
> workweek longer than forty hours unless such employee receives

---

[3] The employer bears the burden of proving that an employee asserting a FLSA claim is exempt, Acs, 444 F.3d at 767; Schaefer, 358 F.3d at 400, and JMCHD does not contend that Carter is an exempt employee.

> compensation for his employment in excess of the hours above
> specified at a rate not less than one and one-half times the regular
> rate at which he is employed.

29 U.S.C. § 207(a)(1).  Plaintiff avers that she and JMCHD meet the FLSA's definitions of employee and employer, respectively.  (Am. Compl. ¶¶ 5, 8, 38, 39, 40, D.E. No. 28.)  She also alleges that Defendant uses a computerized attendance system to automatically deduct a thirty minute meal period from her pay pursuant to its "Meal Break Deduction Policy."  (Id. at ¶ 10.)  However, Carter contends that she and other similarly situated employees perform compensable work during those uncompensated meal breaks.  (Id. at ¶ 11.)  Plaintiff insists that JMCHD does not completely relieve her and other prospective class members from their duties during the meal breaks but instead expects them to be available to work.  (Id. at ¶¶ 12-16.)  The complaint further details that employees must eat without relief from patient demands and without the aid of additional staff.  (Id. at ¶ 17.)  Plaintiff avers that she and other prospective class members often are required to respond to pages and requests from other employees.  (Id. at ¶ 18.)  As a result of Defendant's policy, Plaintiff claims that she and other employees were denied statutory overtime wages to which they were entitled.  (Id. at ¶¶ 40, 41.)  These facts are more than sufficient to give rise to a "plausible suggestion" of a claim.  See Twombly, 550 U.S. at 566, 127 S. Ct. at 1971.

In support of its first argument, Defendant relies principally on the district court decision of Gifford v. Meda, No. 09-cv-13486, 2010 WL 1875096 (E.D. Mich. May 10, 2010).  The plaintiffs in Gifford alleged that their employer had violated RICO by erroneously labeling them as independent contractors and by failing to deduct federal withholdings for income taxes, FICA, and unemployment taxes from their wages.  2010 WL 1875096, at *1.  Additionally, the plaintiffs asserted that the defendants had failed to pay them overtime compensation as required

by FLSA.  Id.  The court, which disposed of the FLSA claims in a single page of a twenty-three page opinion, stated that those claims were "an obvious add-on" and that plaintiffs had "completely failed to allege adequate facts in support of their overtime claim."  Id. at *22.  Under the pleading standard imposed by the court, plaintiffs were required to provide at least an approximation of hours for which they should have been paid overtime.  Id.  Because the complaint was devoid of any assertion that the plaintiffs actually worked overtime for which they were due compensation, the court dismissed the FLSA claims.  Id.

JMCHD argues that this case is directly analogous to Gifford because Carter's complaint also lacks facts establishing that she worked in excess of forty hours per work week.  (Def.'s Reply to Pl.'s Resp. to Mot. to Dismiss 6-8, D.E. No. 32.)  It contends that the complaint contains only "ambiguous, blanket claims," which are insufficient state a claim to relief under Twombly and Iqbal.  (Id. at 7.)  In response, Plaintiff states that she has more than sufficiently pleaded her FLSA claim and that Gifford actually supports a finding that her complaint is adequate.  (Pl.'s Resp. to Def.'s Renewed Mot. to Dismiss 2, D.E. No. 42.)  Carter has provided the Court with a copy of the complaint from Gifford, which she asserts contained no factual allegations to support the FLSA claim.  (D.E. No. 42-1.)

Upon review of Gifford—and the sparse complaint at issue in that case—the Court agrees with the Plaintiff's position.  The Gifford court's conclusion that the FLSA claim was "an obvious add-on" with absolutely no factual support led it to summarily dismiss the claim. Gifford, 2010 WL 1875096, at *22.  Here, Carter has alleged detailed facts sufficient to establish a FLSA violation.  In addition, other opinions have declined to follow the particular pleading standard adopted in Gifford.

In <u>Noble v. Serco, Inc.</u>, No. 3:08-76-DCR, 2009 WL 1811550, at *2 (E.D. Ky. June 25, 2009),[4] the court ruled that a plaintiff may state a claim to relief under the FLSA by alleging facts sufficient to prove (1) the existence of an employer-employee relationship, (2) the employee's acts which are protected by the FLSA, and (3) the employer's failure to pay the employee overtime for those acts.  <u>Id.</u> (quoting <u>Kowlaski v. Kowlaski Heat Treating, Co.</u>, 920 F. Supp. 799, 803 (N.D. Ohio 1996)).  <u>Noble</u> rejected the defendant's argument that a complaint must be dismissed where it failed to include factual allegations that the plaintiff worked in excess of forty hours per week and was not paid overtime wages.  <u>Id.</u> at *3.  The court stated:

> [I]t is not surprising that such facts are not provided in the Complaint.  The employer, not the employee, bears the burden of maintaining records of how many hours an employee works each week and the employee's pay rate.  Discovery and analysis of these records is generally necessary for a plaintiff to satisfy his burden.  Thus, whether Noble can actually establish that he worked in excess of forty hours during particular weeks without receiving the required overtime compensation may become an issue for summary judgment after Serco's employment records have been produced in discovery.  Accepting as true the factual allegations in the Complaint, Noble has sufficiently alleged a plausible overtime compensation claim.

<u>Id.</u> (internal citations omitted).

Similarly, in <u>Monroe v. FTS USA, LLC</u>, No. 2:08-CV-02100-BBD-DK, 2008 WL 2694894, at *3 (W.D. Tenn. July 9, 2008), a court in this district held that plaintiffs had properly pleaded a FLSA overtime claim simply by alleging that (1) the defendants were employers as defined by the statute, (2) they and other similarly situated employees regularly worked overtime

---

[4] The <u>Noble</u> court discussed the impact of the Supreme Court's recent decisions on the appropriate pleading standard in FLSA wage disputes.  2009 WL 1811550, at *2.  It noted that FLSA overtime cases have the potential to be costly and time consuming endeavors.  In that regard, the court considered these cases more like the antitrust litigation in <u>Twombly</u> than the simple pro se § 1983 claim before the Court in <u>Erickson</u>.  <u>Id.</u>  Nonetheless, the court stated that <u>Twombly</u>, as interpreted by the Sixth Circuit, "*does not* require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> (citing <u>Zibbell v. Mich. Dep't of Human Servs.</u>, 313 F. App'x 843 (6th Cir.), <u>cert. denied</u>, 129 S. Ct. 2869, 174 L. Ed. 2d 583 (2009), and <u>Bassett v. Nat'l Collegiate Athletic Ass'n</u>, 528 F.3d 426, 430 (6th Cir. 2008)).

without compensation, and (3) defendants knew that plaintiffs worked overtime.   The court found that these allegations were sufficient to put the defendants on notice of the grounds upon which plaintiff's claimed a FLSA violation.   Id.   In doing so, it also rejected defendants' arguments that plaintiffs' complaint was insufficient because it did not allege what work plaintiffs performed, failed to detail the weeks during which they worked overtime, and did not specify the number of hours they were not paid overtime compensation.   Id.

This Court likewise rejects the Defendant's argument that Plaintiff's claim must be dismissed because it does not allege that she worked in excess of forty hours.   As Noble and Monroe recognized, a plaintiff's failure to outline these details should not lead to dismissal under Rule 12(b)(6).   The FLSA mandates that employers keep records of the wages, hours, and other employment data for each employee.   See 29 U.S.C. § 211(c); 29 C.F.R. § 516.2.   When discovery commences, Carter may search JMCHD's records to determine the specific weeks in which she exceeded forty hours but was not compensated for overtime due to the hospital's meal break policy.   Cf. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87, 66 S. Ct. 1187, 1192, 90 L. Ed. 1515 (1946) ("The remedial nature of [the FLSA] and the great public policy which it embodies . . . militate against making th[e] burden [of proving that plaintiff performed work for which he was not properly compensated] an impossible hurdle for the employee.   Due regard must be given to the fact that it is the employer who has the duty . . . to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. "), superseded by statute on other grounds as stated in Carter v. Panama Canal Co., 463 F.2d 1289, 1293 (D.C. Cir.), cert. denied, 409 U.S. 1012, 93 S. Ct. 441, 34 L. Ed. 2d 306 (1972); Myers v. Cooper Cellar Corp., 192 F.3d 546, 551 (6th Cir. 1999) (stating that FLSA

plaintiff may obtain proof of damages resulting from an employer's failure to pay minimum wage "through discovery and analysis of the employer's code-mandated records"). If, at that time, Defendant discovers that Carter did not work in excess of forty hours and is therefore not due overtime compensation, it may submit such evidence in support of a Rule 56 motion for summary judgment.

As for the argument that Plaintiff could have opted out of the automatic wage deduction, Defendant has presented no evidence of her ability to override the default deduction and the Rule 12(b)(6) stage would not be the proper time to do so. Thus, for the reasons stated, JMCHD's motion to dismiss Carter's FLSA claim is DENIED.

### B. Unjust Enrichment

JMCHD also seeks dismissal of Carter's common law claim of unjust enrichment. In support, Defendant presents three arguments: (1) Plaintiff's complaint fails to satisfy the Twombly/Iqbal pleading requirements for unjust enrichment; (2) the state law claim is preempted by the FLSA; and (3) the Court should decline to exercise supplemental jurisdiction over it. (Def.'s Mot. to Dismiss 1-2, D.E. No. 9; Def.'s Renewed Mot. to Dismiss 1-4, D.E. No. 33.) The Court will address each argument and the Plaintiff's responses thereto in turn.

#### 1. Sufficiency of Complaint

A claim of unjust enrichment under Tennessee common law includes three elements: "1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005) (quoting Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 155 (Tenn. 1966)). "The most significant requirement of an unjust

enrichment claim is that the benefit to the defendant be unjust."  Id.  This doctrine is based upon the equitable principle "that a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit."  Id.

Plaintiff has alleged sufficient facts to state a claim of unjust enrichment.  First, Carter avers that she and other similarly situated employees performed work for the Defendant during their meal breaks.  (Am. Compl. ¶ 11, D.E. No. 28.)  Specifically, Plaintiff states that employees are not relieved of their duties during meal breaks and must answer to requests by patients, coworkers, and supervisors during that time.  (Id. at ¶¶ 12, 13, 17, 18.)  "A benefit is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss."  Freeman, 172 S.W.3d at 525.  These factual allegations evidence a benefit—the work of Plaintiff and other employees during meal breaks—conferred on the Defendant.  Second, Plaintiff avers that JMCHD had an appreciation that it was receiving the benefit of work during employee meal breaks.  (Am. Compl. ¶¶ 22, 47, D.E. No. 28.)  Carter states that she complained about the level of staffing during meal breaks and the inability of employees to take a full break as a result.  (Id. at ¶ 19.)  She further contends that the work performed during meal breaks was obvious to the Defendant.  (Id. at ¶ 20.)  Finally, Plaintiff states that Defendant must know that she and other employees are working during their meal breaks based on staffing shortages and the general demands of the healthcare industry.  (Id. at ¶ 21.)  These factual allegations are sufficient to satisfy the second element of the unjust enrichment claim.

The final requirement for the state claim is that it would be inequitable under the circumstances for a defendant to retain the benefit without compensating the plaintiff.  Freeman, 172 S.W.3d at 525.  This is the crux of such a claim.  See id.  Plaintiff avers that she and other

employees are not paid for the work they perform during meal breaks because the Defendant automatically deducts that time from their pay.  (Am. Compl. ¶¶ 9-16, D.E. No. 28.)  She asserts that "Defendant fails to compensate Plaintiff and class members for their work, electing instead to sit back and accept the benefits of Plaintiff and class members' uncompensated work."  (Id. at ¶ 22.)  Carter contends that "[i]t would be unjust to allow Defendant to enjoy the fruits of the collective class' labor without proper compensation."  (Id. at ¶ 49.)  The Court is convinced, at least at this stage, that Plaintiff has alleged sufficient facts to prove the unjust element of the claim.

JMCHD asserts multiple arguments as to why the Court should dismiss Carter's unjust enrichment claim as inadequately pleaded.  First, Defendant contends that Tennessee law requires Plaintiff to establish the value of the work that she seeks to recover.  (Mem. in Supp. of Def.'s Mot. to Dismiss 15-16, D.E. No. 9-1.)  As Carter's complaint includes no such factual allegations, JMCHD argues that the common law claim must be dismissed.  The Court agrees that the Plaintiff must *prove* the value of the benefit conferred upon the Defendant before she may recover under such a theory.  See D.T. McCall & Sons v. Seagraves, 796 S.W.2d 457, 464 (Tenn. Ct. App. 1990) ("The party seeking to recover using an unjust enrichment theory has the burden of proving it is entitled to relief."); John J. Heirigs Constr. Co. v. Exide, 709 S.W.2d 604, 607 (Tenn. Ct. App. 1986) ("If plaintiff is to recover on the theories of quantum meruit and unjust enrichment it must carry the burden of proving the value of the work performed."). However, Defendant has presented no authority for its position that a Plaintiff must *plead* the value of the benefit.  The Court therefore rejects this argument.

Next, Defendant submits that unjust enrichment is an equitable remedy, which should not be available where an adequate alternative remedy at law exists.  (Mem. in Supp. of Def.'s Mot.

to Dismiss 16, D.E. No. 9-1.)  It contends that Carter has an alternative remedy under the FLSA.  Again, Defendant has failed to provide any authority for its position that the unavailability of other adequate remedies must be pleaded.  Additionally, as the Court will discuss below, the FLSA does not provide a complete remedy to the Plaintiff and the other prospective class members.  The unjust enrichment claim seeks to recover compensation for Plaintiff's meal period work during weeks where the FLSA's overtime rule was not triggered because she worked less than forty hours.

Third, JMCHD cites the case of <u>Lakeside Realtors, Inc. v. Ross</u>, No. 89-311-II, 1990 WL 17212, at *3 (Tenn. Ct. App. Feb. 28, 1990), for the proposition that recovery under an unjust enrichment theory is barred where the plaintiff "undertook the risk" that she would not be compensated for her services.  (Mem. in Supp. of Def.'s Mot. to Dismiss 16-17, D.E. No. 9-1.)  Defendant argues that Plaintiff's complaint lacks factual allegations that plausibly show that she was unaware of its "Meal Break Deduction Policy" when she performed work during meal breaks.  It contends that if she was aware of the policy but performed work anyway, the failure to compensate Plaintiff was not unjust and she cannot recover.  Again, the Court is not persuaded by Defendant's argument.  Essentially, Defendant contends that Plaintiff must allege facts in its complaint to negate a potential defense that it may intend to present.

Even if the Court were to accept the merits of the Defendant's argument, it is not convinced that this fact must be negated in Plaintiff's pleading.  <u>Lakeside Realtors</u> was not decided at the pleading stage, as this case currently stands.  Rather, it was appealed from a trial court's final judgment, where the court had the benefit of viewing all the evidence presented.  <u>Lakeside Realtors, Inc.</u>, 1990 WL 17212, at *2-3.  JMCHD has not cited to and the Court is unaware of any cases applying Tennessee unjust enrichment law that included avoidance of risk

as an element of that claim which must be pleaded.  See Wright v. Linebarger Googan Blair & Sampson, LLP, No. 10-2304, 2011 WL 1100462, at *15 (W.D. Tenn. Mar. 22, 2011) (recognizing only three elements as required to state a claim for unjust enrichment); Freeman, 172 S.W.3d at 525.

Finally, JMCHD argues that Carter's complaint is inadequate because it contains no factual allegations reflecting or inferring her exhaustion of remedies under the FLSA.  (Mem. in Supp. of Def.'s Mot. to Dismiss 17, D.E. No. 9-1.)  It is true that a plaintiff must "demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract."  Freeman, 172 S.W.3d at 525; see also Paschall's, 407 S.W.2d at 155 ("[B]efore recovery can be had against the landowner on an unjust enrichment theory, the furnisher of the materials and labor must have exhausted his remedies against the person with whom he had contracted, and still has not received the reasonable value of his services.").  However, exhaustion is not required where the plaintiff's pursuit of alternative remedies would be futile.  Freeman, 172 S.W.3d at 526; see also City of Goodlettsville, Tenn. v. Priceline.com, Inc., 605 F. Supp. 2d 982, 998-99 (M.D. Tenn. 2009).  Here, Carter's pursuit of an alternative remedy under the FLSA would be futile because the statute does not encompass recovery for those weeks in which she worked less than forty hours.

2.  Preemption

JMCHD next contends that the Court should dismiss Carter's unjust enrichment claim based on preemption by the FLSA.  (Mem. in Supp. of Def.'s Mot. to Dismiss 4-13, D.E. No. 9-1.)

> Federal preemption draws its force from the Supremacy Clause of the United States Constitution.  Here, as in every preemption case, [t]he purpose of Congress is the ultimate touchstone.  [I]n all preemption cases, and particularly in those in which Congress has

> legislated in a field which the States have traditionally occupied,
> we start with the assumption that the historic police powers of the
> States were not to be superseded by the Federal Act unless that was
> the clear and manifest purpose of Congress.

Wimbush v. Wyeth, 619 F.3d 632, 642 (6th Cir. 2010) (citations & internal quotation marks omitted), reh'g & reh'g en banc denied (Oct. 14, 2010).

Courts have recognized that a federal statute may preempt state law in three ways: "First, a federal statute may expressly preempt the state law.  Second, a federal law may impliedly preempt a state law.  Third, preemption results from an actual conflict between a federal and a state law."  Garcia v. Wyeth-Ayerst Labs., 385 F.3d 961, 965 (6th Cir. 2004) (citations omitted). Defendant argues the Plaintiff's unjust enrichment claim is preempted under a theory of obstacle preemption.  Obstacle preemption, a subset of conflict preemption, occurs "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98, 112 S. Ct. 2374, 2383, 120 L. Ed. 2d 73 (1992) (internal quotation marks omitted).

JMCHD relies principally on the Fourth Circuit Court of Appeal's decision in Anderson v. Sara Lee Corp., 508 F.3d 181 (4th Cir. 2007).  In Anderson, production workers at a Sarah Lee bakery challenged the company's dress policy which did not compensate employees for time spent changing in and out of company mandated uniforms.  508 F.3d at 183.  The workers filed a class action complaint alleging that Sarah Lee's policy violated the FLSA.  Id. at 183-84. However, rather than pleading a claim directly under the FLSA, plaintiffs asserted causes of action under North Carolina law for breach of contract, negligence, fraud, conversion, and unfair trade practices, all of which were predicated on a violation of the federal statute.  Id. at 184.

Though the claims for conversion and unfair trade practices were rejected on state law grounds, the Fourth Circuit held that the FLSA preempted recovery on the basis of fraud, breach

of contract, or negligence.  Id. at 187.  The appeals court found it "crucial" that the plaintiffs' ability to prevail on each of the state claims depended upon establishing that Sarah Lee violated the FLSA.  Id. at 193.  The plaintiffs did not contend that the state claims entitled them to recover unpaid wages.  Id.  Rather, they simply pursued remedies under state common law to enforce their rights under the federal statute.  Id.  In rejecting that approach, the court held "that Congress prescribed exclusive remedies in the FLSA for violations of its mandates."  Id. at 194. It determined that the class plaintiffs' state claims were precluded under a theory of obstacle preclusion "[b]ecause the FLSA's enforcement scheme is an exclusive one."  Id.

Defendant contends that Anderson is analogous to the circumstances presented in this case.  (Mem. in Supp. of Def.'s Mot. to Dismiss 8-11, D.E. No. 9-1.)  It argues that a claim of unjust enrichment under Tennessee law does not entitle Carter to recover for work performed during uncompensated meal breaks and that "the only plausible reading of the Complaint is that Plaintiff relies on the FLSA as the predicate for finding the Hospital's pay practices 'unjust.'" (Id. at 9.)   Defendant asserts that the FLSA's enforcement scheme is exclusive and that, as in Anderson, Plaintiff cannot pursue a state law claim that is based upon a violation of the FLSA. (Id. at 10.)

In response, Carter argues that her claim is not preempted because there is no actual conflict between the FLSA and unjust enrichment claims.  (Pl.'s Resp. to Def.'s Mot. to Dismiss 8, D.E. No. 29.)  Plaintiff contends that her state law assertion is not predicated on a finding of a FLSA violation because the two claims represent separate and distinct theories of recovery.  (Id.) She states that unjust enrichment was pleaded to recover for work performed while off the clock even where there is no technical FLSA violation.  (Id. at 8-9.)  Specifically, the FLSA only permits recovery for time worked in excess of forty hours, whereas unjust enrichment might

allow Plaintiff and prospective class members to recover for meal break work performed during weeks in which the employee's total hours did not exceed forty.  (Id. at 9.)

The Court agrees with Carter and finds that the FLSA does not preempt her claim for unjust enrichment under Tennessee law.  The flaw in the Defendant's argument is that Plaintiff's common law claim is not based on a finding that it violated the FLSA.  Unlike Anderson, Plaintiff is not pursuing remedies under state law to enforce the rights provided her under the federal statute.  See Anderson, 508 F.3d at 184, 193.  Rather, Carter has alleged sufficient facts to state an independent claim for unjust enrichment, see supra Part III.B.1, and that cause of action will rise or fall on its own merit, independent of her FLSA claim.  Where the FLSA and supplemental state law claims are independent, most courts have found that the state claim is not preempted.  See, e.g., Sosnowy v. A. Perri Farms, Inc., No. 10-CV-2829 (ADS)(WDW), 2011 WL 488692, at *4 (E.D.N.Y. Feb. 10, 2011) ("To the extent that the state common law claims seek recovery for claims that are unavailable under the FLSA they are not preempted . . . .); Monahan v. Smyth Auto., Inc., No. 1:10-CV-00048, 2011 WL 379129, at *5 (S.D. Ohio Feb. 2, 2011) ("Clearly, unjust enrichment, while possibly based on many of the same facts, is not a claim duplicative of an FLSA claim, as the two do not share the same elements or require the same recovery.  Therefore, the Court finds that a claim for unjust enrichment simply does not interfere with or create any obstacles to the FLSA scheme, and the two theories are not in conflict."); Robertson v. LTS Mgmt. Servs. LLC, 642 F. Supp. 2d 922, 928 (W.D. Mo. 2008) (holding that independent state law claims, including unjust enrichment, were not preempted); Osby v. Citigroup, Inc., No. 07-cv-06085-NKL, 2008 WL 2074102, at *2 (W.D. Mo. May 14, 2008) (concluding that unjust enrichment claims were not preempted where they did not depend on establishing a FLSA violation); cf. Chaluisan v. Simsmetal E. LLC, 698 F. Supp. 2d 397,

408-09 (S.D.N.Y. 2010) (declining to dismiss unjust enrichment claim due to uncertainty as to whether it was duplicative of FLSA claim).

Plaintiff pursues her FLSA claim to collect overtime wages that were allegedly unpaid due to the Defendant's meal break policy. However, her unjust enrichment claim only seeks to recover for the weeks in which she worked less than forty hours and the FLSA does not provide a remedy. Thus, although the assertions are based on the same hospital policy, they seek separate remedies. As an independent claim, Plaintiff's averment of unjust enrichment does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Gade, 505 U.S. at 98, 112 S. Ct. at 2383.

The Court also finds support for this conclusion in a decision of the Sixth Circuit, as well as the FLSA's "savings clause." Although the Sixth Circuit has not yet ruled directly on the FLSA preemption question, in O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567 (6th Cir. 2009), the court indicated that plaintiffs may pursue both state and FLSA claims in a common proceeding:

> [I]f a FLSA lead plaintiff also brings supplemental state claims and then seeks certification as a collective action, a district court evaluates whether the opt-in plaintiffs are "similarly situated" under 29 U.S.C. § 216(b). If the opt-in plaintiffs are similarly situated to the lead plaintiffs, it does not make sense to suggest, as defendants seem to, that only the FLSA claims may proceed collectively, while the supplemental claims would have to proceed individually or would be required to run in parallel to the collective action only by satisfying the more stringent requirements of Fed. R. Civ. P. 23. To disjoin FLSA and supplemental claims in the manner proposed by defendants would defeat the purpose of supplemental jurisdiction, which is to facilitate the resolution of claims that are so closely related to claims for which federal jurisdiction originally lies that the supplemental claims are part of the same case or controversy as the claim independently invoking federal jurisdiction. Notwithstanding the lack of express statutory authority in the FLSA for collective certification of non-FLSA claims, supplemental claims by definition are treated as part of the

same controversy animated by a particular employee's FLSA claim.

575 F.3d at 580 (citations omitted).  The FLSA also contains a "savings clause," which expressly permits states to impose more stringent wage and hour standards.  See 29 U.S.C. § 218(a).  Although the savings clause does not specifically cover Plaintiff's unjust enrichment claim, the provision is evidence of Congress' intent to allow state laws to supplement the FLSA's provisions.  See Monahan, 2011 WL 379129, at *5.  In light of all these factors, the Court holds that Carter's unjust enrichment claim is not preempted by the FLSA.

### 3.  Supplemental Jurisdiction

JMCHD last argues that it would be unwise for the Court to exercise supplemental jurisdiction over Plaintiff and potential class members' state law claims.  (Mem. in Supp. of Def.'s Mot. to Dismiss 18-20, D.E. No. 9-1.)  Defendant argues that the potentially longer statute of limitations for the unjust enrichment claims means much of the proof as to the older common law claims will be irrelevant to those under the FLSA.    It asserts that state law will predominate because many class plaintiffs will have only state law claims.  In addition, Defendant insists that the viability of the unjust enrichment theory under this factual scenario is a "novel" issue of state law that should be left for a Tennessee court to decide.

In response, Carter argues that there are no "novel" issues of state law as Defendant contends and that other courts have allowed state law claims to proceed along side of FLSA claims.  (Pl.'s Resp. to Def.'s Mot. to Dismiss 16-19, D.E. No. 29.)  Most notably, Plaintiff contends that O'Brien "expressly allows for supplemental jurisdiction in FLSA collective actions like Plaintiff's where the state and FLSA claims are related to the same set of facts and proof because it facilitates the resolution of claims and is in the best interests of judicial economy and resources."  (Id. at 18.)

The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact" and "are such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding."   United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966).   However, a federal district court may, in its discretion, decline supplemental jurisdiction over a state law claim even if jurisdiction would otherwise be proper under § 1367(a).   28 U.S.C. § 1367(c).   Section 1367(c)(1) and (2) allow a district court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (1) the claim raises a novel or complex issue of State law, [or] (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."   § 1367(c)(1), (2).

The Court concludes that this case presents a proper basis for exercising supplemental jurisdiction.   Carter's FLSA and unjust enrichment claims derive from a common factual basis— JMCHD's alleged failure to compensate employees for work performed during meal breaks.   The claims "are such that [Plaintiff] would ordinarily be expected to try them all in one judicial proceeding."   Gibbs, 383 U.S. at 725, 86 S. Ct. at 1138.   Were the Court to decline to supplemental jurisdiction, Plaintiff would be forced to pursue large-scale, parallel actions in both federal and state court.   Preventing this judicial inefficiency outweighs the disadvantage of a federal court interpreting Tennessee law.

C.  Conditional Certification

Carter seeks to pursue this FLSA suit as a collective action.  Section 216(b) of the statute

provides in pertinent part:

> An action to recover the liability prescribed in [the FLSA's
> overtime provision] may be maintained against any employer
> (including a public agency) in any Federal or State court of
> competent jurisdiction by any one or more employees for and in
> behalf of himself or themselves and other employees similarly
> situated.  No employee shall be a party plaintiff to any such action
> unless he gives his consent in writing to become such a party and
> such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  In addition to FLSA claims, plaintiffs may also assert supplemental state

law claims as a part of the collective action.  O'Brien, 575 F.3d at 580.  FLSA collective actions

are unlike class actions proceeding under Fed. R. Civ. P. 23 in that class members must opt into

the lawsuit.  Id. at 583; Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006).  To

facilitate that process, district courts may authorize a notice to be sent to all similarly situated

employees to notify them of the opportunity to opt into the suit.  Comer, 454 F.3d at 546 (citing

Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480

(1989)); White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 366 (E.D. Tenn. 2006).

1.  Collective Action Standard

The standard that plaintiffs must meet to obtain court certification of a FLSA collective

action is lower than that for Fed. R. Civ. P. 23 class actions.  O'Brien, 575 F.3d at 584.  Lead

plaintiffs in a FLSA collective action need only show that they are "similarly situated" to

employees in the class they seek to certify.  Id.; § 216(b).  Courts typically engage a two-phase

inquiry to determine whether the lead plaintiffs have satisfied that showing.  Comer, 454 F.3d at

546.  "The first takes place at the beginning of discovery.  The second occurs after all of the opt-

in forms have been received and discovery has concluded."  Id. (internal quotation omitted).

This case is presently at the first phase of the collective action where the Court must determine whether to "conditionally" certify the proposed class.  See id. at 546-47.  The plaintiff's burden at this stage is "fairly lenient," and the lead plaintiff must make only a "modest factual showing" that she is similarly situated to members of the prospective class she seeks to certify and send court-supervised notice.  Id. at 547 (quoting Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000), and Pritchard v. Dent Wizard Int'l Corp., 210 F.R.D. 591, 596 (S.D. Ohio 2002)).  Because of the lenient standard, district courts typically grant conditional certification of collective actions.  Id.

Although the FLSA does not define the meaning of "similarly situated," the Sixth Circuit's O'Brien decision offered clarification on the term.  Despite declining "to create comprehensive criteria for informing the similarly-situated analysis," the O'Brien court did state "that plaintiffs are similarly situated when they suffer from a single, FLSA—violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs."  575 F.3d at 585.  "Showing a 'unified policy' of violations is not required, though."  Id. at 584.  Plaintiffs may also be similarly situated where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."  Id. at 585.  Under the circumstances of O'Brien, "[t]he claims were unified so, because plaintiffs articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets." Id.

2.  Analysis

In support of the motion, Carter submitted her affidavit which states:

24

1.      My name is Karen Louise Carter.  I am majority age and competent to execute this affidavit.   I have personal knowledge of the facts stated herein.

2.      I live in Medina, Tennessee. I am employed by West Tennessee Healthcare at a facility known as the Jackson-Madison County General Hospital.   As an employee of the hospital, I spend my time working on a floor with patient beds. While working on the floor, I have been regularly required to perform compensable work during unpaid "meal breaks[."]

3.      West   Tennessee   Heatlhcare   [sic]   has   a computerized time and attendance system that automatically deducts a 30 minute meal period per work shift.

4.      It is extremely common for hourly employees to perform   compensable   work   for   Defendant   during   their uncompensated "meal breaks."

5.      This occurs for several reasons.   First, West Tennessee Healthcare has never explained to me or other employees what constitutes a compensable meal break under the Fair Labor Standards Act.  We were not trained that a meal eaten while working was compensable work time.  Likewise, we were never trained whether interrupted meal breaks were compensable.

6.      Second, the workload and staffing situation simply does not allow for daily meal breaks.  This puts employees in a "no win" situation.  We are required to take meal breaks, yet we are unable to take them do [sic] to workload and staffing.  As a result, hourly employees (including me) simply work through our meal breaks or try to eat [a] quick meal while we are performing work.

7.      Supervisors are aware of this problem and do not ensure that hourly employees are completely relieved of their work duties during their uncompensated "meal breaks."

8.      My co-workers and I are routinely not completely relieved of our job duties during uncompensated "meal breaks."

9.      West Tennessee Healthcare does nothing in practice to prohibit employees from working during their "meal breaks" and routinely suffers or permits employees to perform such work.

10.   In fact, although West Tennessee Healthcare automatically deducts 30 minute meal periods, it expects employees to be available to work throughout our shifts.

11.   We are expected to eat without any change in demands from patients or relief by additional staff.

12.   We are often required to respond to pages, as well as requests by patients, co-workers and supervisors, during unpaid "meal breaks."

13.   West Tennessee Healthcare knows about these issues.  In fact, I have complained about staffing and the inability to take a full meal break as a result of these problems.

(Carter Aff., D.E. No. 4-4.)[5]

Magistrate Judge Bryant's Report and Recommendation determined that Carter had made a sufficient showing for conditional certification.  (Report and Recommendation 6, D.E. No. 48.) He stated that "[w]hen an FLSA action is based on a defendant's unified and allegedly illegal policy, courts may 'conditionally certify' a class at the early stages of discovery, before all plaintiffs have received notice, based on representations contained in the pleadings and affidavits of named plaintiffs that the defendant employs a unified policy that has resulted in FLSA violations to all putative class members."  (Id. at 4-5) (citing O'Brien, 575 F.3d at 585-86; Pacheco v. Boar's Head Provisions Co., 671 F. Supp. 2d 957, 959, 961 (W.D. Mich. 2009)). Relying on the pleadings and Carter's affidavit, the Magistrate Judge identified representations that "Defendant employs a unified policy that has resulted in FLSA violations to all putative class members."  (Id. at 6.)  He additionally found that "[Carter's] Affidavit sets forth that [she]

---

[5] Plaintiff recently filed a declaration stating that she "regularly and repeatedly worked over 40 hours in a workweek."  (Carter Decl. ¶ 3, D.E. No. 53-1.)  She submitted this sworn statement in response to Defendant's argument that her affidavit never suggested that she in fact worked hours in excess of forty per week, which is a prerequisite to overtime compensation under the FLSA.  Defendant's objection to the Report and Recommendation argued that it would be inappropriate for Carter to proceed as the representative plaintiff in this collective action because she had not alleged that she personally suffered a FLSA violation.  (Def.'s Objections to Report and Recommendation 7-9, D.E. No. 49.)  In light of Carter's recent declaration, Defendant states that it no longer intends to pursue this objection.  (Reply in Supp. of Def.'s Objections 7 n.4, D.E. No. 57.)  The Court will therefore not consider it here.

and other employees routinely are required to work during mandatory uncompensated meal breaks."  (Id.)  On those bases, Magistrate Judge Bryant determined that Plaintiff had shown her position was similar, even if not identical, to that of the prospective opt-in plaintiffs and recommended that conditional certification be granted.  (Id.)

Defendant has raised multiple objections to the Report and Recommendation.  (D.E. No. 49.)  Most notably, JMCHD argues that the Magistrate Judge erred in finding that the Plaintiff's pleadings and affidavit presented a sufficient factual basis for inferring that its meal break deduction policy resulted in class-wide FLSA violations.  Despite acknowledging that the Plaintiff's burden at the conditional certification stage is light, Defendant contends that a single affidavit from the named plaintiff is insufficient.

In response, Carter argues that she has satisfied the FLSA's similarly situated requirement.  She states that some courts have conditionally certified a collective action and permitted court-supervised notice based on allegations in the complaint alone.  See, e.g., Pritchard, 210 F.R.D. at 595-96; Belcher v. Shoney's, Inc., 927 F. Supp. 249, 251 (M.D. Tenn. 1996) (citing Allen v. Marshall Field & Co., 93 F.R.D. 438, 442-45 (N.D. Ill. 1982)).  Plaintiff argues that the factual allegations in her complaint and affidavit evidence are sufficient to satisfy the "modest factual showing" that is required.  Moreover, Carter asserts that even though O'Brien did not require proof of a single policy, she "has shown a pervasive single practice of employees working 'off the clock' during meal breaks and Defendant's computer system automatically deducting this time from employees' pay."  (Pl.'s Resp. to Def.'s Objections to Report and Recommendation 5, D.E. No. 50.)

Subsequent to the Magistrate Judge's Report and Recommendation and Defendant's objections thereto, Plaintiff submitted the additional affidavits of Pamela Randle and Jeannette

Brackens, both of whom are employed by the Defendant.  (D.E. Nos. 60-1, 62-1.)  Randle's affidavit states that she is employed by West Tennessee Healthcare as a lab technician and has regularly worked over forty hours during workweeks.  (Randle Aff. ¶ 2, D.E. No. 60-1.)  During her employment with West Tennessee Healthcare, Randle affirms she has been "regularly required to perform compensable work during unpaid 'meal breaks[.]'"  (Id.)  Similarly, Brackens' affidavit reflects that she is employed by West Tennessee Healthcare as a surgical technologist and has worked over forty hours during workweeks.  (Brackens Aff. ¶ 2, D.E. No. 62-1.)  As well, she asserts under oath that she has been "regularly required to perform compensable work during unpaid 'meal breaks[.']"  (Id.)  In addition, the Randle and Brackens affidavits repeat paragraphs 3 through 11 of the Carter affidavit.  (Randle Aff. ¶¶ 3-11, D.E. No. 60-1; Brackens Aff. ¶¶ 3-11, D.E. No. 62-1.)  Randle and Brackens also have filed consent forms to be joined as plaintiffs.  (D.E. Nos. 61-1, 65-1.)  The Court will consider this recently submitted proof, in addition to the pleadings and the Carter affidavit upon which the Magistrate Judge relied.

Defendant's objection presents the question of what level of proof is sufficient to make the "modest factual showing" that the lead plaintiff and proposed class members are "similarly situated."  As the cases cited by the parties reflect, the standards imposed by district courts at the conditional certification stage are varied.  Compare, e.g., Miller v. Jackson, Tenn. Hosp. Co., No. 3:10-1078, slip op. at 3, 13 (M.D. Tenn. Mar. 22, 2011) (conditionally certifying collective action on basis of named plaintiff's affidavit and "sworn declarations" of two proposed plaintiffs), Johnson v. ECT Contracting, LLC, No. 3:09-0130, 2010 WL 625390, at *1, *4 (M.D. Tenn. Feb. 18, 2010) (relying on affidavits of three plaintiffs and one former employee to conditionally certify collective action), and Bailey v. Youth Vills., Inc., No. 07-1089-T-An, slip

op. at 2-4 (W.D. Tenn. Mar. 18, 2008) (Todd, J.) (granting conditional certification on affidavits of lead plaintiff and one other individual), with Colson v. Avnet, Inc., 687 F. Supp. 2d 914, 928-29 (D. Ariz. 2010) (three declarations and several exhibits were insufficient evidentiary basis), and Guess v. U.S. Bancorp, No. 06-07535-JF, 2008 WL 544475, at *3-4 (N.D. Cal. Feb. 26, 2008) (denying conditional certification where evidence consisted of declarations from plaintiff and plaintiff's counsel).  This variance is not surprising given the district court's significant discretion at this stage.  See Comer, 454 F.3d at 546 (citing Hoffman-La Roche, 493 U.S. at 169-70, 110 S. Ct. at 486); Monroe v. FTS USA, LLC, 257 F.R.D. 634, 637 (W.D. Tenn. 2009) (citing Hoffman-La Roche, 493 U.S. at 169-70, 110 S. Ct. at 486).  Under the circumstances of this case, the Court finds that the factually-detailed complaint, affidavit and consent form of the named plaintiff, and affidavits and consent forms of two additional employees of the Defendant are sufficient to make a "modest factual showing" that Carter is similarly situated to prospective class members.  Those materials present evidence that JMCHD employs a company-wide "Meal Break Deduction Policy" whereby a thirty minute meal period is automatically deducted from the time worked of all hourly employees.  However, Carter, Randle, and Brackens submit that they and other employees are frequently required to continue working during that uncompensated meal period.  O'Brien held that plaintiffs are similarly situated when their claims are unified by a common theory of defendant's statutory violations.  O'Brien, 575 F.3d at 585; see also Miller, No. 3:10-1078, slip op. at 13 ("[T]he proposed class is unified in making the same fundamental argument as to why they were not compensated for time worked – the defendant did not honor the notion of 'meal breaks.'  Through the invocation of this unifying theory, the plaintiff has met the 'low bar' of conditional certification.").  Carter and the two proposed plaintiffs have presented a common theory here—the denial of statutory overtime

wages and "straight time" resulting from Defendant's failure to relieve them of their duties during uncompensated meal breaks. That common theory is a sufficient basis to find that Carter and the proposed class members are "similarly situated."

JMCHD presents several additional arguments as to why the Court should not conditionally certify this case. Defendant argues that some courts have held that a plaintiff may not rely on inadmissible evidence at the conditional certification stage. It contends that Carter's affidavit contains assertions describing the experiences of *other* employees and that those assertions are not based on Plaintiff's personal knowledge or are inadmissible hearsay that should not be considered. When those portions of Carter's affidavit are stricken, Defendant contends that Plaintiff has failed to meet the modest burden of production.

Although some courts have refused to consider inadmissible evidence at the conditional certification stage, see, e.g., Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 865-66 (S.D. Ohio 2005); Richards v. Computer Scis. Corp., No. 3-03-CV-00630(DJS), 2004 WL 2211691, at *1 (D. Conn. Sept. 28, 2004), as the parties recognize, that view is certainly not unanimous. See, e.g., Reyes v. AT & T Mobility Servs. LLC, No. 10-20837-CIV, 2010 WL 5464174, at *3-4 (S.D. Fla. Dec. 29, 2010); Crawford v. Lexington-Fayette Urban Cnty. Gov't, No. 06-299 JBC, 2007 WL 293865, at *3-4 (E.D. Ky. Jan. 26, 2007); White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 368 (E.D. Tenn. 2006). Regardless, the Court need not decide this unsettled issue because it is convinced that the Carter, Randle, and Brackens affidavits present admissible evidence based on their own personal knowledge. See White, 236 F.R.D. at 369 ("[I]t is reasonable to infer from the evidence submitted that [plaintiffs], as employees of [defendant], would have learned during the normal course of their employment how the company operates and what the company's policies were.").

Defendant next argues that a plaintiff seeking conditional certification must show the existence of other employees who would join the collective action if given the opportunity to do so. In Frye v. Baptist Memorial Hospital, Inc., No. 07-2708, 2008 WL 6653632 (W.D. Tenn. Sept. 16, 2008), a court from this district stated that "[a]lthough the Sixth Circuit has never articulated a specific standard, the Eleventh Circuit has noted that the first question a court should consider when deciding whether to conditionally certify a class and issue court supervised notice is whether 'there are other employees . . . who desire to "opt-in."'" Id. at *6 (quoting Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1567 (11th Cir. 1991); see also Lindberg v. UHS of Lakeside, LLC, No. 2:10-cv-02014-JPM-dkv, 2011 WL 204832, at *5 n.9 (W.D. Tenn. Jan. 21, 2011). However, Frye noted that no minimum number of opt-in plaintiffs is required because the question is simply whether others desire to join the action. 2008 WL 6653632, at *6. At the time Defendant raised this argument, Carter was the only named plaintiff and no proposed opt-in plaintiffs had been presented to the Court. However, as previously noted, the Plaintiff has since filed the affidavits and notices of two additional JMCHD employees who desire to opt into the collective action. Thus, the Court finds that there is sufficient interest to conditionally certify a class and permit court-supervised notice.

For the reasons stated herein, the Court finds that Carter had satisfied the modest factual showing required to conditionally certify the class and issue court-supervised notice. The Court therefore conditionally certifies a class of "all persons employed by Defendant within the six years preceding the filing of this action, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid 'meal break.'"

In addition to conditionally certifying the class, Carter's motion also requests that the Court: 1) direct JMCHD to immediately provide her the names, last known addresses, and last

known telephone numbers of all its hourly employees who were subject to its automatic meal break deduction policy within the last six years; 2) order that notice of the collective action be mailed to class members, posted at Defendant's facilities where class members work, and enclosed with class members' next scheduled paychecks; 3) toll the statute of limitations for the proposed class as of the date Carter filed this action; and 4) deem the consent forms of opt-in plaintiffs "filed" on their postmark date.  JMCHD has not responded to these additional requests, stating that they would be moot if the Court denied conditional certification.  Defendant moved for permission to brief those issues separately within fourteen days after the Court entered an order conditionally certifying the collective action.  (D.E. No. 11.)  Plaintiff responded in opposition to Defendant's proposed briefing schedule, and the Court referred that motion to the Magistrate Judge.  (D.E. Nos. 14, 23.)  Because the Magistrate Judge has not yet ruled on Defendant's motion, the Court will reserve determination of the remaining issues until he has done so.

## IV. CONCLUSION

In summary, JMCHD's motion to dismiss Carter's common law claims (D.E. No. 9) and renewed motion to dismiss with prejudice all federal and state claims (D.E. No. 33) are DENIED.  The Plaintiff's complaint alleges sufficient facts to state a claim to relief under the FLSA and for unjust enrichment.  In addition, the FLSA does not preempt Plaintiff's independent state law claim, and it is proper for the Court to exercise supplemental jurisdiction under these circumstances.  Finally, the common theory of statutory violations is a sufficient basis for conditionally certifying Carter's proposed class.  The Magistrate Judges' Report and Recommendation (D.E. No. 48) is ADOPTED, and Plaintiff's motion for conditional certification and court-supervised notice (D.E. No. 4) is GRANTED in part.

IT IS SO ORDERED this 31st day of March, 2011.


s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE